COFER *v.* BENSON.

A tenant having mortgaged his whole crop, and this mortgage being duly recorded, and his landlord having thereafter received enough of the crop, on which he had a special lien for rent superior to the mortgage, to satisfy his claim for rent in full, this claim was discharged relatively to the mortgagee and the right of the latter to collect his mortgage debt out of that part of the crop not delivered to the landlord.   The tenant had no power to consent to any application by the landlord of the subject-matter of the lien for rent which would leave that lien in force to the prejudice of the mortgage, relatively to so much of the crop as the landlord did not receive.

January 27, 1894.

Money rule.   Before Judge McWHORTER.   Wilkes superior court.   May term, 1893.

COLLEY & SIMS, for plaintiff in error.

W. M. & M. P. REESE, *contra.*

SIMMONS, Justice.

Benson rented to Hilliard a tract of land for the year 1891, for $150. Hilliard then owed him an open account for the year 1890, of $108. In May, 1891, Hilliard mortgaged to Cofer the crop planted on this land, to secure a debt for supplies which Cofer had furnished him; and the mortgage was duly recorded. After the crop matured, Hilliard delivered to Benson, out of the crop made on the land, cotton which Benson sold for $232.05; and Benson, with the consent of Hilliard, applied the proceeds first to the payment of his open account, and the balance to the rent. Cofer foreclosed his mortgage upon the balance of the crop and had the mortgage *fi. fa.* levied upon it; and Benson sued out a distress warrant for the balance of his rent, and this was also levied upon the same property. The crop was sold by the sheriff; and the proceeds not being sufficient to satisfy both claims, the question as to which of these parties was entitled to the fund was submitted to the court, without the intervention of a jury. The court decided that the fund should be applied first to the balance due on the distress warrant, and the remainder to the mortgage *fi. fa.;* and to this ruling Cofer excepted.

As between the parties themselves, when a payment is made by a debtor to a creditor holding several demands against him, the debtor has the right to direct the claim to which it shall be appropriated; and if he fails to do so, the creditor has the right to appropriate it at his election. If neither exercises this privilege, the law will direct the application in such manner as is reasonable and equitable, both as to parties and third persons. Code, §2869. In all cases due regard must be had to the rights of third persons. Where one of the claims held by the creditor is secured and another unsecured, he cannot appropriate the payment first to his unsecured claim, over the objection of another cred-

itor holding a lien upon the property or the fund from which the payment is made. Such an appropriation by the creditor would in equity amount to a payment or extinguishment *pro tanto* of his lien. See *Nunnally* v. *Newton*, 4 *Ga.* 356; *Rushin* v. *Shields*, 11 *Ga.* 636; *Simmons* v. *Cates*, 56 *Ga.* 609. Otherwise, a judgment creditor, by continuing his dealings with the debtor, acquiring additional claims against him, and applying to his unsecured demands such payments as might from time to time be made to him by the debtor, could hold open his judgment and postpone junior judgment creditors indefinitely. Under the facts of this case, Benson, could not appropriate the cotton to his unsecured claim, either of his own accord or by the consent or direction of the debtor. To allow Hilliard to direct such an appropriation would be to allow him to divest to that extent the lien of Cofer's mortgage on the crop. As to the right of a debtor to consent to the appropriation of payments where the interests of third parties are involved, see Hughes *v.* Johnson, 38 Ark. 285; Jones on Chattel Mortgages, §640. The lien for rent being superior to that of the mortgage, Benson was entitled to have the proceeds of the cotton applied first to his rent; but outside of this, he stood upon no better footing than any other unsecured creditor. When he took the cotton, he knew or ought to have known of Cofer's lien upon it, the mortgage being recorded; and he had no right to apply the mortgaged property to his unsecured claim. He was bound to apply it to the extinguishment of his lien. (Ogden *v.* Harrison, 56 Miss. 43; Sanders *v.* Knox, 57 Ark. 80.) If he did not do this, a court of equity, in a contest between him and Cofer, could make the appropriation. A court, on a rule to distribute money, is a court of equity, or acts on equitable principles. Treating Benson's lien as extinguished, upon the principle that equity regards that as done which

ought to have been done, Cofer's lien was the only one before the court when the question arose as to the distribution of the fund realized from the sale of the balance of the crop, and that fund should have been applied to it.

There is no suggestion in the agreed statement of facts that the cotton received and disposed of by Benson brought less than its full value, or was sold subject to Cofer's mortgage. Nor does it appear that it is accessible to seizure under that mortgage. As cotton is a commodity which passes rapidly through the channels of commerce and disappears after once being put in those channels, the fair presumption is that this cotton is forever gone beyond the reach of the mortgagee, and that he is without remedy against the same. There is no injustice to Benson in adopting this theory, for it was by his act that the cotton disappeared, and he has received and appropriated its full value.

*Judgment reversed.*